665 So.2d 457 (1995)
Allie MARTIN
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 95-CA-139.
Court of Appeal of Louisiana, Fifth Circuit.
November 15, 1995.
Writ Denied December 14, 1995.
Lisa A. Dunn, Jacob J. Amato, Jr., Gretna, for plaintiff-appellee.
William W. Hall, Metairie, for defendant-appellant.
Before KLIEBERT, GAUDIN and DUFRESNE, JJ.
GAUDIN, Judge.
This single automobile accident occurred on May 10, 1992 at approximately 12:30 a.m. Alice Martin said that she was driving her 1983 Oldsmobile on state highway 45 when she had to veer sharply to her right to avoid *458 a vehicle coming directly at her. She drove off the roadway and crashed into one of three concrete blocks approximately 11 and one-half feet from the edge of the asphalt pavement. The blocks apparently were in place to protect a Jefferson Parish water pumping station.
Martin filed suit against the Louisiana Department of Transportation and Development (DOTD) alleging that the concrete blocks, called pylons, were negligently positioned within the DOTD's right-of-way and that the highway and right-of-way at the accident scene were defective and unsafe. The trial judge in the 24th Judicial District Court awarded Martin $677,336.66 but found her 40 per cent at fault. The DOTD was 60 per cent responsible, the judgment stated. No percentage of negligence was attributed to the oncoming or phantom driver.
On appeal, the DOTD denies any fault or neglect. Martin is also an appellant, contending that the DOTD was 100 per cent responsible for her injuries.
Our review indicates that the trial judge was not clearly wrong (1) in finding the DOTD negligent, (2) in concluding that Martin contributed and (3) in awarding damages. It was error, however, to exclude the phantom driver's percentage of negligence. We remand for a reconsideration of overall fault in accord with comparative negligence principles.
We shall consider in order the fault of the DOTD and that of the plaintiff driver. We will then discuss the phantom driver and his or her contribution to this accident and, finally, Martin's damages.

DOTD'S FAULT
Highway 45 is an old roadway in Lafitte, Louisiana built at least 50 years ago. There were no highway design standards then and there are no state or federal mandates now to bring existing roadways up to current guidelines. Highway 45 runs adjacent to a waterway and has numerous curves. The accident occurred at what is called "Fleming's Curve," admittedly a dangerous portion of the highway.
The plaintiff called James Clary, an expert in the field of highway design, who testified that "Fleming's Curve" was critically deficient in several respects, including lane and shoulder widths, degree of curvature and horizontal alignments. He also said that there was insufficient clear space which would permit a driver to leave the highway but return safely. The state's right-of-way, he said, was 30 feet from the center of the highway. This would place the concrete blocks within the right-of-way.
Lloyd Porta, DOTD's project development manager, stated that only a 10-foot clear zone was required; he placed the concrete blocks beyond the area the highway department legally had to keep clear of obstructions.
Joseph Blaschke, an expert in highway design from Bryan, Texas, also testified for the DOTD, by way of a stipulated-to statement. In his opinion, the highway at "Fleming's Curve" is not dangerous if drivers respond to the turn-warning signs.
In his assigned "Reasons for Judgment," the trial judge said:
"Based on all the evidence submitted, the Court finds that the DOTD was negligent in failing to properly maintain this roadway and this negligence was a cause of the injuries Ms. Martin suffered. The Court finds the DOTD had a duty to protect motorists from injuries caused by highway defects. The evidence established that this roadway was defective and unreasonably dangerous and DOTD was aware of the various deficiencies. Therefore, the Court must conclude the DOTD breached its duty to properly maintain the highway and its shoulders."
In saying that the state failed "... to properly maintain this roadway ..." and in calling the highway "... defective and unreasonably dangerous ...", the trial judge did not precisely say whether he found the highway markings and signs legally inadequate or whether he found the DOTD negligent in not providing a clear zone within its apparent right-of-way. He may have meant both situations to apply. In any event, if the trial judge accepted as applicable and more creditable the opinions of the petitioner's expert, *459 Clary, the court's findings are supported by a significant portion of the record.
Clary testified that the highway department should not have allowed the concrete blocks to be placed where they were and that, regardless, the blocks should have been removed long ago from the state's apparent right-of-way. Neither Porta nor Blaschke could say that the blocks were not on the state's right-of-way or under the control of the DOTD. Had the blocks not been present, Clary said, Martin could have safely returned to the highway. From photographs in evidence, the blocks are solid concrete standing about two to three feet high. They appear to be approximately two feet in width.
In its brief to this Court, the DOTD assigned three district court errors: (1) Martin did not establish the elements necessary for her claim, (2) no percentage of fault was assigned to the phantom driver and (3) the trial judge violated federal law by receiving into evidence statistical data of other accidents. Only (2) has merit. Regarding (3), there is no indication that statistical information contributed to or played any part in the trial judge's findings or his judgment. There is no reference in the "Reasons for Judgment" to any statistics about prior accidents at "Fleming's Curve."

MARTIN'S NEGLIGENCE
The plaintiff, 40 years of age and divorced, testified that she was very familiar with "Fleming's Curve." She passed there daily commuting to work as a bookkeeper. On the evening of the accident, she said she was driving between 20 and 25 miles per hour when she saw approaching headlights in her lane of travel. She swerved to avoid this vehicle, she said, and missed it by inches. When her car struck the concrete block, she did not know what she had hit.
Martin said she had been at a crawfish boil in Lafitte where she drank two beers, the second one at about 10 or 10:30 p.m. after she had eaten. Earlier, at approximately 10 a.m., she stated that she drank half a beer. Her driving, she said, was not impaired when she was forced off the roadway.
In his "Reasons for Judgment," the trial judge assigned partial fault to Martin because of the beers, as follows:
"Next, the Court must determine the degree of fault, if any, Ms. Martin bears for the cause of this accident. Ms. Martin had a duty to maintain control of her vehicle adequately under the circumstances in which she was driving. The plaintiff testified she was a frequent user of the highway and curve in question because for many years her residence was at the end of the road and she traveled the road many times a day. When she was admitted to the emergency room at West Jefferson Medical Center, she stated she lost control of her auto. When she saw Dr. Robert Fleming, her treating physician at Westside Orthopedics, at an office visit on June 8th, 1992, she stated she had to steer off the roadway to avoid hitting an oncoming car in her lane of travel. Ms. Martin testified that immediately prior to this accident, she attended a crawfish boil where she drank two beers. Both the EMT's ambulance record and the nurse's notes at the Medical Center state that Ms. Martin smelled of alcohol. Based on the evidence, the Court finds Ms. Martin comparatively negligent and assesses her 40 per cent (40%) at fault in causing the accident."
In evaluating and comparing fault, and in making related findings, a trial judge necessarily has fairly wide leeway. The trial judge could have placed Martin's degree of responsibility at more or less than 40 per cent, just as the DOTD's fault could have been set at more or less than 60 per cent.
Here, we find it difficult to say, on appeal, that Martin's fault and the DOTD's fault, as they relate to one another, are clearly wrong or without evidentiary support. It would be more difficult for us to find that the concrete blocks were not within the state's right-of-way or at least within the apparent right-of-way maintained by the DOTD. See Ambrose v. New Orleans Police Dept. Ambulance Service, 639 So.2d 216 (La.1994), and other cases saying that where two permissible views of the testimony and evidence exist, the factfinder's choice cannot be manifestly erroneous *460 and/or subject to appellate amendment. Still, the negligence of the oncoming motorist must be accounted for.

PHANTOM DRIVER
The automobile that Martin said forced her off the highway did not stop at the accident scene. Martin argues that we should not now consider the phantom driver's legal culpability because the DOTD did not stress phantom drive fault in district court and that the trial judge did not err in failing to raise this issue sua sponte.
In its answer, the DOTD alleged that "... the accident and injuries allegedly occurred as a result of the negligence of third parties not under the direction and/or control of your said defendant and for whom your said defendant may not be held legally responsible."
In Ferrell v. Fireman's Fund Ins. Co., et al., 650 So.2d 742 (La.1995), the Supreme Court of Louisiana said that the percentage of fault of a phantom vehicle (one that contributed to the accident but did not stop) must be accounted for. In Ferrell, phantom drive fault was not addressed by either the jury or trial judge or, subsequently, by the Fourth Circuit Court of Appeal, but the Supreme Court remanded for the recalculation of respective percentages of fault, including that of the so-called phantom.
By Martin's own testimony, the negligent oncoming motorist was a factor in the accident. Such blame has to be assessed.
The DOTD, in its brief, asks that this Court assign a percentage of fault to the phantom driver or remand to the district court for such a calculation. We deem it more appropriate for the trial judge to initially make this determination.
Also, the DOTD asks that some measure of fault be assigned to the owner of the concrete blocks, either Jefferson Parish or some other third party. We reject this request. The driver of the oncoming car was a true phantom in the sense that his or her identify will remain unknown. There is no conceivable way of finding out his or her identify; however, the owner of the concrete blocks or perhaps the identity of the third party who placed the block on the apparent right-of-way could possibly have been determined if the DOTD (or the plaintiff, for that matter) had made a reasonable district court procedural effort. The blocks are right there, visible and (certainly in this case) dangerous, and appear to be protecting the water pumping station.

MARTIN'S DAMAGES
Martin's injuries were serious. At the hospital following the accident, physicians at first contemplated amputation of both feet but decided on extended treatment. After seven and a half months, she began to learn how to walk again.
At trial, the DOTD did not present medical evidence to offset the alleged and proven grave nature of Martin's injuries. On appeal, the DOTD does not contend that the award was excessive; consequently, we see no error in the trial judge's award.
We remand to the district court only for the recalculation of percentages of fault following a contradictory hearing, noting that the percentages of fault of Martin and the DOTD as they relate to one another are affirmed. Once the fault of the phantom driver is set, the remainder of 100 per cent fault is to be assigned 60 per cent to DOTD, 40 per cent to Martin.
Each party is to bear its own costs of this appeal.
AFFIRMED IN PART, REMANDED WITH INSTRUCTIONS.